**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

**HARPER et al.**                                                              **CIVIL ACTION**

**VERSUS**                                                                     **NO. 22-4347**

**GEICO INDEMNITY COMPANY et al.**                        **SECTION: "G"(1)**

<u>**ORDER AND REASONS**</u>

Plaintiffs Richard and Paula Harper ("Plaintiffs") bring this litigation against Defendants Geico Indemnity Company, Zachary L. Kampf, Great Northern Insurance Company, and Vanguard Inspection Services arising out of a motor vehicle collision.[1] Before the Court are Great Northern Insurance Company and Vanguard Inspection Services' (collectively, "Defendants") "*Daubert*/FRE 702 Motion and/or Motion *in Limine* to Exclude and/or Limit Testimony of Plaintiff's Economist"[2] and Plaintiffs' "Opposed Motion to Continue Trial Date."[3] In Defendants' *Daubert*/Motion in *Limine*, Defendants contend that the opinions of Plaintiffs' expert economist, Ed Comeaux, should be excluded or limited because they are unreliable.[4] Plaintiffs oppose the motion[5] and seek a continuance of the trial date and pre-trial deadlines, in part, to provide Comeaux's supplemental expert report.[6] Defendants oppose a continuance of the trial date and

---

[1] Rec. Doc. 1-2.

[2] Rec. Doc. 34.

[3] Rec. Doc. 44.

[4] Rec. Doc. 34 at 1.

[5] Rec. Doc. 35.

[6] Rec. Docs. 44, 44-1, 46.

1

pre-trial deadlines.[7] Having considered the motions, the memoranda in support and in opposition to both motions, the record, and the applicable law, the Court grants Defendants' *Daubert* motion in part and denies it in part. The Court also grants Plaintiffs' motion to continue.

## I. Background

On January 18, 2022, Plaintiffs filed a Petition in the 32nd Judicial District Court for the Parish of Terrebonne against Geico Indemnity Company ("Geico") and Zachary L. Kampf ("Kampf").[8] Plaintiffs allege that Richard Harper was driving his Ford F-150 south bound on Louisiana Highway 24 in the left lane and approaching the intersection with Waterplant Road Bridge in Houma, Louisiana, when his Ford F-150 collided with Kampf's Toyota Corolla.[9] According to Plaintiffs, Kampf was traveling south bound on Louisiana Highway 24 in the right lane and approaching the intersection with Waterplant Road Bridge when he "suddenly and without warning crossed the lane divider and entered the left southbound lane of Louisiana Highway 24 in an attempt to turn left onto Waterplant Road Bridge, striking the vehicle being driven by [Richard Harper], causing damages and severe injury to [Richard Harper]."[10] Plaintiffs allege that Kampf was cited with "Turning From Wrong Lane."[11] Plaintiffs further assert that Geico was the insurer for both Plaintiffs and Kampf.[12]

---

[7] Rec. Doc. 47.

[8] Rec. Doc. 1-2.

[9] *Id.* at 1–2.

[10] *Id.* at 2.

[11] *Id.*

[12] *Id.* at 2–3.

2

Plaintiffs brought a negligence claim against Kampf, asserting that Kampf's negligence was the proximate cause of the collision and the resulting damages they suffered.[13] Plaintiffs also brought a strict liability claim against Kampf.[14] In addition, Plaintiffs brought a breach of contract cause of action against Geico for failure to pay claims Plaintiffs filed under their policy and a cause of action under the Louisiana Direct Action Statute, Louisiana Revised Statute Section 22:1269, as Geico is also Kampf's insurer.[15] Plaintiffs seek damages for injuries Richard Harper suffered from the motor vehicle incident, including damages for the loss of consortium Paula Harper suffered as a result of her husband, Richard Harper's injuries.[16]

On May 10, 2022, Plaintiffs filed a First Amended Petition, adding Vanguard Inspection Services ("Vanguard") as a Defendant, alleging that Vanguard was Kampf's employer and that Kampf was acting within the scope of his employment when the accident occurred and seeking vicarious liability from Vanguard.[17] On September 1, 2022, Plaintiffs filed a Second Amended Petition, adding Great Northern Insurance Company ("Great Northern") as a Defendant since Great Northern is Vanguard's insurer.[18] On November 1, 2022, Great Northern removed the case to this Court based on diversity jurisdiction under 28 U.S.C. Section 1332(a).[19] On November 27, 2023, Vanguard and Great Northern filed a Motion for Summary Judgment, arguing that Plaintiff's

---

[13] *Id.*

[14] *Id.* at 2.

[15] *Id.* at 2–3.

[16] *Id.* at 4.

[17] *Id.* at 10–12.

[18] *Id.* at 18–19.

[19] Rec. Doc. 1.

claims against them should be dismissed because Kampf was an independent contractor of Vanguard rather than an employee.[20] On January 17, 2024, the Court issue an Order and Reasons denying the Motion for Summary Judgment as there was a genuine factual dispute as to whether Kampf was an independent contractor or an employee.[21] On February 6, 2024, Defendants filed the instant *Daubert*/Motion in *Limine*.[22] On February 12, 2024, Plaintiffs filed an opposition.[23] On February 16, 2024, Defendants filed a reply.[24]

On February 28, 2024, the parties appeared before the Magistrate Judge for a settlement conference but were unable to reach a settlement.[25] On March 5, 2024, Defendants filed a "Motion to Strike Plaintiff's Tinnitus Claim."[26] On March 7, 2024, Plaintiffs filed a "Motion in Limine" to exclude testimony related to Richard Harper's past drug use.[27] On March 8, 2024, Plaintiffs filed a "Motion to Continue Trial Date" and a "Motion to Expedite Motion to Continue."[28] On March 11, 2024, Plaintiffs filed a "Supplemental Memorandum in Support of Motion to Continue."[29] On March 11, 2024, Defendants filed an opposition to the Motion to Continue.[30] According to the

---

[20] Rec. Doc. 18.

[21] Rec. Doc. 31.

[22] Rec. Doc. 34.

[23] Rec. Doc. 35.

[24] Rec. Doc. 37.

[25] Rec. Doc. 40.

[26] Rec. Doc. 42.

[27] Rec. Doc. 43.

[28] Rec. Docs. 44, 45.

[29] Rec. Doc. 46.

[30] Rec. Doc. 47.

Court's Scheduling Order, a pre-trial conference is scheduled for March 21, 2024 and trial is scheduled to commence on April 8, 2024.[31]

## II. Parties' Arguments

### A.   *Defendants' Daubert/Motion in Limine*

#### 1.   **Defendants' Arguments in Support of the Motion**

Defendants move the Court to issue an Order excluding or limiting the opinions of Plaintiffs' economist, Ed Comeaux, ("Comeaux") because Defendants contend that Comeaux's opinions concerning Richard Harper's lost wages are unreliable.[32] Defendants contend that Comeaux's opinions are "inherently speculative and not based on actual evidence relative to [P]laintiff's employment history and future work capabilities."[33]

Defendants first reason that Comeaux's calculations are based on the assumption that Richard Harper is permanently disabled and totally removed from the workplace, but no physician has testified or opined as such.[34] Defendants note, rather, that Richard Harper's treating physician, Dr. Liechty anticipates that he can resume work at a light to medium capacity after surgery.[35] Defendants further note that Comeaux did not rely on the opinions of a physician or vocational rehabilitation expert, or otherwise did not rely on any evidence suggesting that Richard Harper is or will be permanently disabled.[36]

---

[31] Rec. Doc. 13.

[32] Rec. Doc. 34-1 at 1.

[33] *Id.*

[34] *Id.* at 1, 8.

[35] *Id.* at 8.

[36] *Id.* at 3.

Defendants further reason that the wage base utilized by Comeaux to calculate Richard Harper's past and future lost earnings is not based on Richard Harper's employment and wage history.[37] Defendants argue that Comeaux made his calculations based on only some years of Richard Harper's gross earnings, "which fails to consider [P]laintiff's sporadic employment and earnings history."[38] Defendants note that at the time of the September 21, 2021 collision, Richard Harper was working at ExPert Riser Solutions, LLC ("ExPert Riser").[39] Defendants further note that Comeaux, after accounting for Richard Harper's reduced work-life expectancy as a lifelong daily smoker, concluded that Richard Haprer's past and future lost earnings and fringe benefits if he continued working at ExPert Riser to be $539,000.[40] According to Defendants, Comeaux's selection of only certain years, where Richard Harper had higher than average earnings while omitting years where he had lower than average earnings, renders his wage base and lost wages calculations unreliable.[41] Defendants note that another section of this Court has excluded the testimony of an economist when the economist only used certain years to calculate the plaintiff's wage base, as opposed to a fuller range of years.[42] Defendants also contend that selective use of certain years of Richard Harper's employment history assumes that his employment will not be

---

[37] *Id.* at 2.

[38] *Id.*

[39] *Id.*

[40] *Id.* at 3.

[41] *Id.* at 6.

[42] *Id.* at 6–7 (citing *Scardina v. Maersk Line, Ltd.*, No. 00-1512, 2002 WL 1585566, at *2–3 (E.D. La. July 15, 2002) (Vance, J.)).

interrupted for reasons such as Richard Harper failing a drug test, being laid off when there is a downturn in the offshore industry, and personal emergencies.[43]

Finally, Defendants contend that "the recent amendment to Federal Rule of Evidence 702 … instructs the Court to consider the source upon which an expert's opinion relies" and "[i]f that source is of such little weight, the jury should not be permitted to receive that opinion."[44] Thus, Defendants conclude that the Court must evaluate the sources of an expert's opinion in its role as a gatekeeper of evidence under *Daubert*.[45]

### 2.    Plaintiffs' Arguments in Opposition to the Motion

In their opposition to the motion, Plaintiffs contend that Comeaux's testimony should not be excluded or limited because "any doubt as to the credibility of such evidence should be weighed at trial."[46] Plaintiffs then argue that Comeaux's methods are reliable in part because Comeaux reviewed Richard Harper's deposition testimony when crafting his expert report.[47] Plaintiffs note that Richard Harper testified that he has not worked since the collision occurred.[48] Plaintiffs acknowledge that their counsel instructed Comeaux to assume disability, as Richard Harper was 59 years old and testified that he has extreme pain all over his body.[49] Plaintiffs also note that Comeaux did change his opinions when asked how Richard Harper's ability to return to work

---

[43] *Id.* at 7–8.

[44] *Id.* at 10 (citing *Jacked Up, L.L.C. v. Sara Lee Corp.*, 807 F. App'x 344, 348 (5th Cir. 2020)).

[45] *Id.* at 10–11.

[46] Rec. Doc. 35 at 1–2.

[47] *Id.* at 4.

[48] *Id.*

[49] *Id.*

would affect his findings.[50] Plaintiffs further note that when Comeaux prepared his expert report, Dr. Leichty had not yet testified that Richard Harper may be able to return to work in a light capacity if his surgery was successful.[51] Plaintiffs thus argue in the alternative that Comeaux should be allowed to re-evaluate his opinions based on Dr. Leichty's new opinion.[52]

Plaintiffs next argue that Comeaux did not selectively pick certain years to calculate potential lost wages. [53] Rather, Plaintiffs contend that the years of wage data Comeaux excluded were either: (1) years of unemployment on or around COVID, (2) unemployment as a result of the collision, and (3) two years of below-normal salary for Richard Harper after leaving ExPert Riser.[54] Plaintiffs assert that these years are "not representative of what Mr. Harper would have made but-for the accident."[55] Plaintiffs further argue that Comeaux's method of calculating Richard Harper's lost wages is reliable because he relied on information he was given regarding Richard Harper's expected work time and his salary and the resulting calculations were in line with Richard Harper's previous earnings.[56]

### 3.    Defendants' Arguments in Further Support of the Motion

In their reply, Defendants reiterate that Comeaux's opinions are unreliable because Comeaux makes improper assumptions about Richard Harper's medical condition and

---

[50] *Id.*

[51] *Id.*

[52] *Id.* at 4–5.

[53] *Id.* at 5.

[54] *Id.*

[55] *Id.*

[56] *Id.*

employment wage history, and he relied on "wrong facts" to reach those opinions.[57] Defendants contend that Comeaux's opinions would be more prejudicial than probative and they would confuse the jury.[58] Defendants oppose Plaintiffs' suggested alternative of allowing Comeaux to recalculate lost wages based on Dr. Liechty's opinion that Richard Harper is able to resume work because discovery is closed and Plaintiff's counsel had the opportunity to ask Comeaux about this during his deposition but chose not to.[59]

**B.**     ***Plaintiffs' Motion to Continue Trial***

**1.**     **Plaintiffs' Arguments in Support of the Motion**

In the Motion to Continue Trial, Plaintiffs hypothesize that if the Court grants Defendants' *Daubert*/Motion in *Limine* and also grants Plaintiffs the opportunity to provide Comeaux's supplemental report, counsel would need more time to file the appropriate motion, receive that report and provide it to defense.[60] Plaintiffs also note that Defendants' "Motion to Strike Plaintiffs' Tinnitus Claim" and Plaintiffs' "Motion in Limine" are both pending and waiting oppositions.[61] Plaintiffs similarly hypothesize that if the Court denies Defendants' "Motion to Strike Plaintiffs' Tinnitus Claim," then "defense counsel will likely ask to depose the doctor associated with the tinnitus claim."[62] Plaintiffs contend that a continuance will also provide the parties the opportunity to reach a settlement because the Court's potential rulings on these motions will provide the parties

---

[57] Rec. Doc. 37 at 1–2.

[58] *Id.* at 1.

[59] *Id.* at 2.

[60] Rec. Doc. 44-1 at 2.

[61] *Id.* (citing Rec. Docs. 41, 42).

[62] *Id.*

a better understanding of their settlement positions.[63] Therefore, Plaintiffs seek a 60 day continuance of all deadlines in this matter.

### 2.    Plaintiffs' Arguments in Further Support of the Motion

In their supplemental memorandum, Plaintiffs note that they plan to take the video depositions of Dr. Liechty and Comeaux, but the dates offered by Dr. Liechty and Comeaux for the depositions do not work for Defendants' counsel.[64] Plaintiffs also note that Plaintiffs' lead counsel is not available on the date noticed for the video deposition of Defendant Zachary Kampf.[65] Plaintiffs contend that these are additional reasons why a continuance is necessary.[66]

### 3.    Defendants' Arguments in Opposition to the Motion

Defendants contend that contrary to Plaintiffs' assertion, remaining pending evidentiary motions are not a reason for a continuance of the trial date.[67] Defendants further contend that Plaintiffs should have known of Defendants' evidentiary motions for some time.[68] Defendants note that they filed a "Motion to Strike Plaintiffs' New Tinnitus Claim" because Plaintiffs have placed them "in a tenuous and unfair position" when Plaintiffs notified them of this new medical condition on February 28, 2024.[69] Defendants note that the discovery deadline was February 2, 2024 and

---

[63] *Id.* at 3.

[64] Rec. Doc. 46 at 1.

[65] *Id.*

[66] *Id.* at 1–2.

[67] Rec. Doc. 47 at 2.

[68] *Id.*

[69] *Id.*

they thus have no opportunity to conduct discovery related to this tinnitus claim.[70] Defendants argue that Plaintiffs' counsel's scheduling issues with the video deposition of Defendant Zachary Kampf are not actually scheduling issues but rather "dilatory tactics that prevent the progress of this litigation and movement towards trial."[71]

Defendants also argue that Federal Rule of Civil Procedure 16 does not favor granting Plaintiffs' motion.[72] Defendants aver that pending evidentiary motions and the possibility of settlement are not adequate explanations for why a continuance is needed.[73] Defendants further contend that they will face prejudice because they are preparing their witnesses to appear at trial, including issuing trial subpoenas and making travel arrangements.[74] Defendants cite to *Williams v. Magnolia Community Services, Inc.*, where another section of this Court denied the plaintiff's motion to continue trial when the parties were less than one month away from trial.[75]

### III. Legal Standards

*A.    Daubert & Expert Testimony*

The district court has considerable discretion to admit or exclude expert testimony under Federal Rule of Evidence 702.[76] Rule 702 states that a witness "qualified as an expert by

---

[70] *Id.*

[71] *Id.* at 4–5.

[72] *Id.* at 5.

[73] *Id.*

[74] *Id.* at 5–6.

[75] *Id.* at 6 (citing *Williams v. Magnolia Comm. Servs., Inc.*, No. 21-2200, 2022 WL 16842893 (E.D. La. Oct. 6, 2021) (Lemelle, J.).

[76] *See Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 138–39 (1997); *Seatrax, Inc. v. Sonbeck Int'l, Inc.*, 200 F.3d 358, 371 (5th Cir. 2000).

knowledge, skill, experience, training, or education," may provide expert testimony when "scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue."[77] For the testimony to be admissible, Rule 702 establishes the following requirements:

> (1) the testimony must be based upon sufficient facts or data,
>
> (2) the testimony must be the product of reliable principles and methods, and
>
> (3) the expert must reliably apply the principles and methods to the facts of the case.[78]

In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, the Supreme Court explained that Rule 702 requires the district court to act as a "gatekeeper" to ensure that "any and all scientific testimony or evidence admitted is not only relevant, but reliable."[79] The proponent of expert evidence must prove, by a preponderance, that the evidence is reliable.[80] The court's gatekeeping function mostly involves a two-part inquiry.

First, the court must determine whether the expert testimony is reliable, which requires an assessment of whether the expert testimony's underlying reasoning or methodology is valid.[81] The court's inquiry into the reliability of expert testimony is flexible and fact-specific.[82] The reliability

---

[77] Fed. R. Evid. 702; *see also Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993).

[78] Fed. R. Evid. 702.

[79] *Daubert*, 509 U.S. at 589; *see also Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999) (clarifying that the court's gatekeeping function applies to all forms of expert testimony).

[80] *Jacked Up*, 807 Fed. App'x at 348 (citing *MM Steel, L.P. v. JSW Steel (USA) Inc.*, 806 F.3d 835, 850 (5th Cir. 2015)).

[81] *See Daubert*, 509 U.S. at 589. The party offering the testimony has the burden to establish reliability by a preponderance of the evidence. *See Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir. 1998) (citing *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717 (3d Cir. 1994)).

[82] *Seatrax*, 200 F.3d at 372.

inquiry extends to "all aspects of an expert's testimony," including "the methodology, the facts underlying the expert's opinion, the link between the facts and the conclusion, et alia."[83] The aim is to exclude expert testimony based merely on subjective belief or unsupported speculation.[84] In analyzing reliability, *Daubert* instructs courts to consider (1) whether the theory has been tested; (2) whether the theory has been subject to peer review and publication; (3) any evaluation of known rates of error; (4) whether standards and controls exist and have been maintained with respect to the technique; and (5) general acceptance within the scientific community.[85]

Second, the court must determine whether the expert's reasoning or methodology "fits" the facts of the case and whether it will assist the trier of fact in understanding the evidence.[86] The second inquiry primarily analyzes whether the expert testimony is relevant.[87]

Yet a court's role as a gatekeeper does not replace the traditional adversary system.[88] A "review of the caselaw after *Daubert* shows that the rejection of expert testimony is the exception rather than the rule."[89] "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking

---

[83] *Knight v. Kirby Inland Marine, Inc.*, 482 F.3d 347, 355 (5th Cir. 2007) (citation omitted).

[84] *See Daubert*, 509 U.S. at 590.

[85] *Id.* at 592–94. In *Kumho Tire Co. v. Carmichael*, the Supreme Court emphasized that the test of reliability is "flexible" and that Daubert's list of specific factors does not necessarily nor exclusively apply to every expert in every case. *Kumho Tire*, 526 U.S. at 141. The overarching goal "is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Id.* at 152.

[86] *See Daubert*, 509 U.S. at 591; Fed. R. Evid. 702.

[87] *See Daubert*, 509 U.S. at 591; Fed. R. Evid. 702.

[88] *See Daubert*, 509 U.S. at 596.

[89] Fed. R. Evid. 702 advisory committee's note, "2000 Amendments."

shaky but admissible evidence."[90] "As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility."[91] However, the Fifth Circuit has held that "[a]lthough the basis of an expert's opinion usually goes to the weight and not the admissibility of expert testimony, in some cases 'the sources upon which an expert's opinion relies is of such little weight that the jury should not be permitted to receive that opinion.'"[92]

**B.     *Federal Rule of Civil Procedure 16 & Amending Scheduling Order***

Federal district courts have the inherent power to enforce their scheduling orders,[93] and Federal Rule of Civil Procedure 16(b) provides that a scheduling order "may be modified only for good cause and with the judge's consent."[94] Whether to grant or deny a continuance is within the sound discretion of the trial court.[95] In deciding whether to grant a continuance, the Court's "judgment range is exceedingly wide," for it "must consider not only the facts of the particular case but also all of the demands on counsel's time and the court's."[96] Courts may consider the following factors in deciding whether to exclude a witness or an exhibit and whether a continuance is warranted: "(1) the explanation for the failure to identify the witness; (2) the importance of the

---

[90] *Daubert*, 509 U.S. at 596 (citing *Rock v. Arkansas*, 483 U.S. 44, 61 (1987)).

[91] *United States v. 14.38 Acres of Land, More or Less Sit. in Leflore Cnty.*, 80 F.3d 1074, 1077 (5th Cir.1996) (quoting *Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 422 (5th Cir. 1987)).

[92] *Jacked Up*, 807 Fed. App'x at 348 (citing *Viterbo*, 826 F.2d at 422).

[93] *See Flaska v. Little River Marine Const. Co.*, 389 F.2d 885, 886 & n.3 (5th Cir. 1968) (citing *Link v. Wabash R. Co.*, 370 U.S. 626, 630 (1962)).

[94] Fed. R. Civ. P. 16(b)(4).

[95] *United States v. Alix*, 86 F.3d 429, 434 (5th Cir.1996).

[96] *Streber v. Hunter*, 221 F.3d 701, 736 (5th Cir. 2000) (internal citations omitted).

testimony; (3) potential prejudice in allowing the testimony; and (4) the availability of a continuance to cure such prejudice."[97]

## IV. Analysis

### A.    Whether Comeaux's Testimony Should be Excluded or Limited

Defendants contend that Comeaux's testimony should be excluded because it is unreliable and speculative, as Comeaux's assumption that Richard Harper is disabled for life is not supported by the evidence.[98] Further, Defendants contend that Comeaux's base wage calculation is based on the assumption that Richard Harper was able to make this amount in 2013, 2014, and 2015 is also speculative and unreliable.[99] Plaintiffs counter that the reliability of Comeaux's testimony goes to weight rather than admissibility.[100] Plaintiffs propose in the alternative that Comeaux should be allowed to modify his opinions based on Dr. Liechty's recent opinion that Richard Harper is able to return to work if he receives surgery.[101] Defendants oppose allowing Comeaux to modify his opinions because discovery has closed.[102]

### 1.    Applicable Law

In *Masinter v. Tenneco Oil Co.*, the Fifth Circuit considered the reliability of the plaintiff and the defendants' dueling economists' opinions on the plaintiff's lost wages.[103] The Fifth Circuit

---

[97] *Betzel v. State Farm Lloyds,* 480 F.3d 704, 707 (5th Cir. 2007).

[98] Rec. Doc. 34 at 1–8.

[99] *Id.* at 2, 6, 7.

[100] Rec. Doc. 35 at 1–2.

[101] *Id.* at 4–5.

[102] Rec. Doc. 37 at 2.

[103] *Masinter v. Tenneco Oil Co.*, 929 F.2d 191 (5th Cir.1991).

agreed with the district court's finding that the plaintiff's economist, Dr. Wolfson's calculation of the plaintiff's lost wages was speculative because Dr. Wolfson assumed that the plaintiff would remain employed with his employer, Hydril, despite the fact that Hydril underwent massive layoffs.[104] The Fifth Circuit also found Dr. Wolfson's opinions speculative because his calculations assumed that the plaintiff would continue to incur future wage loss through the age of 70.[105] Further, the Fifth Circuit also held that "[t]he record also reveals that Dr. Wolfson's assumptions of fringe benefits were not appropriately supported" in part because it was based on the assumption that he would remain employed with Hydril.[106] As for the defendant's economist, Dr. Boudreaux, the Fifth Circuit found Dr. Boudreaux's 25 percent reduction in earnings figure based on economic conditions in the oil industry was reasonable.[107] The Fifth Circuit noted that "evidence concerning the economic conditions in the oil industry is relevant to determine to what extent an injured person will suffer future losses."[108]

Another section of this Court has considered the reliability of an economist's lost wages calculation in *Scardina v. Maersk Line, Ltd.*[109] The plaintiff's economist, Dr. Rice, used $38,481 and $76,962 as base wages even though the plaintiff's average annual income for the last nine years before his accident was $28,416.[110] The plaintiff argued that using $38,481 as a base wage

---

[104] *Id.* at 193.

[105] *Id.*

[106] *Id.* at 194.

[107] *Id.*

[108] *Id.*

[109] *Scardina*, 2002 WL 1585566, at *1–2.

[110] *Id.*

was justified because he had actually shown that he was able to make this amount on one occasion while working for only three months in 1997.[111] The plaintiff further argued that his recent receipt of a PIC certificate could double his earning capacity of $38,481 since some employment contracts requiring a PIC certificate called for 100% or even 150% overtime.[112] The presiding judge rejected these arguments, reasoning that "[e]ven assuming [the plaintiff] testifies at trial to his personal knowledge that such jobs exist, such a scenario is pure speculation and, even acknowledging his recent receipt of the PIC certificate, it is not supported by the evidence of his past work history."[113] The presiding judge further reasoned that the "[p]laintiff asks the [c]ourt to assume that in the future a high paying employment contract requiring a PIC and providing 100% to 150% overtime would always be available, that he would always be hired for that contract, and that, unlike his practice in the past, he would have always worked to his full capacity, for his future work-life expectancy of 9 years."[114] The presiding judge noted that the plaintiff's employment records from 1990 through 1999 demonstrated a "sporadic work and earnings history," as his annual earnings varied from $12,851 in 1993 to $39,536.06 in 1996.[115] The presiding judge thus concluded that Dr. Rice's testimony based on the plaintiff's project annual incomes of $38,000 and nearly $77,000 was not sufficiently tied to the facts or supported by the evidence available to the Court.[116]

In *Young v. Brand Scaffold Services, LLC*, a judge in the Eastern District of Texas found

---

[111] *Id.* at *2.

[112] *Id.*

[113] *Id.*

[114] *Id.*

[115] *Id.*

[116] *Id.* at *3.

the testimony of the plaintiff's economist, Dr. Steward unreliable in part because Dr. Steward's opinion that the plaintiff's non-injury earning capacity exceeded $36,000 per year was not supported by the evidence.[117] From 2002 to 2007, the plaintiff's average earnings per year were $2,806.69.[118] Dr. Steward did not review the plaintiff's payroll stubs, tax returns, or W-2 statements and instead calculated the plaintiff's losses based on information that the plaintiff earned approximately $17.50 an hour and worked at least 40 hours per week.[119] To calculate the plaintiff's non-injury earning capacity, Dr. Steward referred to the average wages for a welder in the Houston, Texas area based on the May 2007 Metropolitan and Nonmetropolitan Area Occupational Employment and Wage Estimates for Houston-Sugar Land- Baytown, Texas.[120] The presiding judge found that the plaintiff's "employment records from 2002 through 2007 demonstrate a sporadic work and earnings history" which "varied from zero to approximately $9,000."[121] The presiding judge noted that "[i]nstead, Dr. Steward apparently assumed that, unlike in the past, Young would consistently work to his full capacity in the future based upon a hypothetical welder in the Houston metropolitan area."[122] The presiding judge found this to be "speculative and conjectural at best, lacking any support in the record and belied by [the plaintiff's] past work history."[123] The presiding judge concluded that "Dr. Steward's testimony regarding

---

[117] *Young v. Brand*, No. 07-917, 2009 WL 4674053 (E.D. Tex. Mar. 16, 2009) (Crone, J.).

[118] *Id.* at *3.

[119] *Id.*

[120] *Id.*

[121] *Id.* at *4

[122] *Id.*

[123] *Id.* (citations omitted).

Young's projected annual income of $36,046 per year [was] not sufficiently tied to the facts or supported by other evidence in the record."[124]

## 2.   Analysis

### i.   The Permanent Medical Disability Assumption

In calculating Richard Harper's lost wages, Comeaux assumed that Richard Harper was "permanently and totally disabled."[125] However, Comeaux did not rely on any objective evidence that Richard Harper is permanently and totally disabled.[126] He has not consulted with a vocational rehabilitation expert in making his calculations.[127] Comeaux also did not consider any alternate scenarios about Richard Harper's ability to return to work.[128] Comeaux did not receive or review any of Defendants' experts reports, including Nancy Favaloro, Defendants' vocational rehabilitation expert.[129] Comeaux reviewed Richard Harper's deposition testimony in preparing his expert report, but did not meet with or speak to Richard Harper.[130] Richard Harper states in his deposition that he "can't do nothing" and "can no longer be responsible for what happens in [his] life" as a result of the injuries he suffered from the collision.[131]

In his deposition, Dr. Liechty testified that Richard Harper "was basically able to get

---

[124] *Id.* at *5.

[125] Rec. Doc. 35-1 at 5.

[126] *Id.*

[127] *Id.*

[128] *Id.*

[129] *Id.* at 4–5.

[130] *Id.* at 5.

[131] Rec. Doc. 35-2 at 122–23.

around and do what he wanted to do [but] now he [is] hurting everywhere."[132] Dr. Liechty further testified that Richard Harper's "pain was getting so severe … that we had to bump him up to Percocet, which is my strongest medicine that I prescribe post-op."[133] When asked whether he has "ever restricted Mr. Harper from doing work," Dr. Liechty replied "I wouldn't have to. He can barely get around. He is in tremendous pain."[134] However, Dr. Liechty testified that he believes Richard Harper's pain issues will be resolved and he will be able to return to work at a light or medium capacity if Richard Harper undergoes SI joint surgery.[135]

Plaintiff has not shown that Comeaux's assumption that Richard Harper is permanently disabled is supported by a preponderance of the evidence. While Richard Harper and Dr. Liechty both testified that Richard Harper's mobility and ability to work has been impaired by the extreme pain he experiences, Dr. Liechty stated that if Richard Harper receives SI joint surgery, those pain issues will be improved and Richard Harper may return to work at a light or medium capacity. As Plaintiffs acknowledged, Comeaux did not consider this scenario where Richard Harper is able to return to work at a light to medium capacity because Dr. Liechty's deposition was taken on February 1, 2024, after Comeaux prepared his expert report and had his deposition taken on February 24, 2024.[136] Therefore, Comeaux's assumption that Richard Harper is permanently disabled must be excluded because it is not supported by a preponderance of the evidence.

---

[132] Rec. Doc. 35-3 at 20.

[133] *Id.* at 29–30.

[134] *Id.* at 35.

[135] *Id.* at 40.

[136] Rec. Doc. 35-1 at 1; Rec. Doc. 35-3 at 1.

### ii.        The Average Salary Wage Base Assumption

At the time of the collision in September 2021, Richard Harper was recently re-employed at ExPert Riser.[137] Richard Harper first worked for ExPert Riser for a number of years from at least 2012 to approximately 2016.[138] Richard Harper testified that during this first time he was employed at ExPert Riser, he was working seven days a week, 12 hours a day, even though a letter from Human Resources stated that his schedule was six days a week, 10 hours a day.[139] Richard Harper was unemployed from December 2019 to September 2021 and received unemployment benefits during this period because of COVID and Hurricane Ida.[140] He testified that he could not go offshore during this time period.[141] Richard Harper is currently 59 years of age.[142]

Comeaux used Richard Harper's wages from 2013, 2014, and 2015 at ExPert Riser to calculate Richard Harper's base wage if he were to return to employment at ExPert Riser.[143] Comeaux also calculated the loss of Richard Harper's fringe benefits.[144] Comeaux notes that Richard Harper's earnings in 2013, 2014, and 2015 were approximately $52,000, $51,000, and $60,000.[145] Comeaux projected that Richard Harper would receive a base salary of $62,000 after

---

[137] Rec. Doc. 35-2 at 39, 46.

[138] The parties did not submit Richard Harper's employment records for a clearer picture of his employment history, but Richard Harper testified that he worked at Versa Integrity Group for two and a half or three years until he was laid off in October 2019. *Id.* at 47–48.

[139] *Id.* at 43–44.

[140] *Id.* at 38, 39, 40, 47.

[141] *Id.* at 38.

[142] *Id.* at 5.

[143] Rec. Doc. 35-1 at 6–7.

[144] *Id.* at 5, 8.

[145] *Id.* at 6.

accounting for inflation from 2015 to 2024 or 2025.[146] Comeaux acknowledged that Richard Harper made less in 2016, 2017, and 2018 at ExPert Riser, but nevertheless used his wages from 2013, 2014, and 2015 to calculate the base wage because this Comeaux believed Richard Harper was capable of earning that amount, and he believed it was comparable to Richard Harper's historical work earnings prior to ExPert Riser.[147] Comeaux did not review any of Richard Harper's actual employment records from ExPert Riser.[148] However, he assumed that Richard Harper worked six days a week because Richard Harper said in his deposition that he worked five to seven days a week and also because of a letter from Human Resources stating that Richard Harper would work weekends.[149] Comeaux did not consider that Richard Harper received unemployment benefits in 2020 and 2021.[150]

Plaintiff has not shown that Comeaux's calculations are supported by a preponderance of the evidence. Comeaux's selective use of Richard Harper's wages from 2013, 2014, and 2015 to calculate the base wage is sporadic, speculative, and unreliable. As Comeaux acknowledged, Richard Harper's subsequent wages in 2016, 2017, and 2018 at ExPert Riser were lower. As discussed above, courts have found that an economist's selective use of higher wage earnings data during a particular period of time, rather than the plaintiff's average wage during the course of his or her employment history, rendered the economist's future earnings projections speculative and

---

[146] *Id.* 7.

[147] *Id.* at 6–7.

[148] *Id.* at 3, 8.

[149] *Id.*

[150] *Id.* at 10.

unreliable.[151] Therefore, Comeaux's average salary assumption is not supported by a preponderance of the evidence.

**B.      *Whether Trial and Pre-Trial Deadlines Should be Continued***

In opposition to Defendants' *Daubert*/Motion in *Limine*, Plaintiffs argue in the alternative that Comeaux should be allowed to amend his expert report in light of Dr. Liechty's opinion that Richard Harper can return to work if he receives surgery.[152] Defendants oppose because discovery has closed and Plaintiffs did not ask Comeaux to perform alternate scenario calculations during Comeaux's deposition.[153]

The Court considers four factors in exercising its discretion to exclude a witness: "(1) the explanation for the failure to identify the witness; (2) the importance of the testimony; (3) potential prejudice in allowing the testimony; and (4) the availability of a continuance to cure such prejudice."[154]

Here, under the first factor, Plaintiffs explain that Comeaux did not consider the alternate scenario that Richard Harper may return to work because Dr. Liechty's deposition was taken on February 1, 2024, after Comeaux's deposition was taken on January 24, 2024.[155] Pursuant to the Court's Scheduling Order, the discovery deadline was February 2, 2024.[156] Because the parties

---

[151] *Scardina*, 2002 WL 1585566, at *2–3; *Young*, 2009 WL 4674053, at *4–5. Comeaux testified that Richard Harper's earnings for Versa Integrity Group as an inspector in 2019 was approximately $100,000. Rec. Doc. 25-1 at 9. However, Comeaux's calculations assume that Richard Harper will resume work at ExPert Risers, where he was working as a sandblaster/painter, and not Versa Specialty Group as an inspector. *Id.* at 40.

[152] Rec. Doc. 35 at 4–5.

[153] Rec. Doc. 37 at 2.

[154] *Betzel*, 480 F.3d at 707.

[155] Rec. Doc. 35-1 at 1; Rec Doc. 35-3 at 1.

[156] Rec. Doc. 13 at 4.

only learned on February 1, 2024 of Dr. Liechty's new opinion that Richard Harper may return to work if he receives surgery and discovery closed on February 2, 2024, there was a very short period of time for Comeaux to recalculate Richard Harper's lost wages based on this new information. Previously, Richard Harper had testified that his mobility was limited due to the extreme pain he experienced because of the collision. Therefore, it is understandable that Plaintiffs believed Richard Harper's testimony up until February 1, 2024 supported their assertion that he was permanently disabled.  Under the second factor, Comeaux's lost wages calculations are important to determining the extent of Richard Harper's damages. Under the third and fourth factors, Defendants may be prejudiced if Plaintiffs are allowed to introduce Comeaux's recalculation of lost wages without a continuance of the pre-trial deadlines and the trial date because Defendants may not have sufficient time to review Comeaux's revised opinions. Therefore, these four factors weigh in favor of continuing trial to allow Comeaux to submit revised lost wages calculations.

In the Motion to Continue Trial, Plaintiffs raise additional arguments that support continuing the trial date. Specifically, Plaintiffs contend that a continuance will also allow Plaintiffs time to take the video depositions of Zachary Kampf and Comeaux.[157] Defendants aver that these reasons Plaintiffs identified for continuing trial are inadequate for continuing trial and rather, posit that Plaintiffs' counsel's explanation for the scheduling issues with Kampf is merely a "dilatory tactic."[158] Defendants further assert that they will be prejudiced because they have subpoenaed witnesses and began making travel arrangements for witnesses.[159]

---

[157] Rec. Docs. 44-1, 46.

[158] Rec. Doc. 47 at 1–5.

[159] *Id.* at 5–7.

The email threads related to the parties' scheduling of the video testimony of Zachary Kampf that Defendants attached in their opposition to the motion reveal the parties' unavoidable scheduling conflicts.[160] Kampf's testimony will be important to the parties in establishing facts related to Kampf's liability for the motor vehicle collision. His testimony will also be important to answering whether Kampf is an independent contractor or an employee, which in turn determines whether Vanguard is vicariously liable. As Kampf is the tortfeasor in this matter, his testimony will be essential to addressing these issues. While Defendants contend that a continuance of the trial date and pre-trial deadlines will prejudice them because they have issued trial subpoenas and began making travel arrangements for these witnesses, trial is still a few weeks away. The balance of these four factors favors continuing the trial date and pre-trial deadlines so that Plaintiff can obtain his damages evidence from Comeaux's revised expert report. A continuance will allow the parties to participate in the video deposition of Kampf so that his testimony may assist with the issues of Kampf's liability and the vicarious liability of Vanguard. Therefore, these four factors weigh in favor of briefly continuing trial.

Further, it appears that Richard Harper has not reached maximum medical recovery. Dr. Liechty's deposition indicates that Richard Harper has not received the surgery he has been recommended. Defendants' "Motion to Strike Plaintiff's New Tinnitus Claim" also indicates that Plaintiff is still treating for his injuries, as Defendants assert that they were only recently informed of Plaintiffs' new condition on February 28, 2024.[161] Finally, this case was removed to this Court

---

[160] *See* Rec. Doc. 47-2.

[161] *See* Rec. Doc. 42.

on November 1, 2022, and there have been no prior continuances.[162] The Scheduling Order was issued on March 14, 2023.[163] Therefore, there is good cause for briefly continuing discovery related to damages, including allowing Comeaux to recalculate Richard Harper's lost wages and fringe benefits and completing the video testimony of Kampf.

## V. Conclusion

Plaintiffs have not shown by a preponderance of the evidence that Comeaux's lost wages calculation is reliable, as Dr. Liechty's testimony indicates that Richard Harper may return to work if he undergoes surgery and Comeaux's selective use of wage earnings from years when Richard Harper received higher pay is sporadic and speculative. Further, as explained more fully above, there is good cause for a brief reopening of discovery to complete discovery related to damages, for Comeaux to recalculate Richard Harper's lost wages and fringe benefits, and for the parties to complete the video testimony of Zachary Kampf.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' "*Daubert*/FRE 702 Motion and/or Motion *in Limine* to Exclude and/or Limit Testimony of Plaintiff's Economist"[164] is **GRANTED IN PART** to the extent that Comeaux may not testify to his wage loss calculations that are based on assumptions not supported by the record. Plaintiffs may obtain a supplemental expert report from Comeaux correcting the deficiencies identified in this Order.

---

[162] Rec. Doc. 1.

[163] Rec. Doc. 13.

[164] Rec. Doc. 34.

**IT IS FURTHER ORDERED** that Plaintiffs' "Motion to Continue Trial Date"[165] is **GRANTED**.

**IT IS FURTHER ORDERED** that the parties contact the Court's case manager within 14 days of this Order to select new pre-trial deadlines and a trial date.

**NEW ORLEANS, LOUISIANA**, this ___15th___ day of March, 2024.

**NANNETTE JOLIVETTE BROWN**
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**

---

[165] Rec. Doc. 44.